

FILED
JUN 20 2011
CLERK, U.S DISTRICT COURT
[illegible] VA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                 Civil Action No. 4:10cv31

**DONALD S. HUNT, et al.,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the court on plaintiff's motion for partial summary judgment. The court has reviewed the briefs and record and finds that oral argument is unnecessary because the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. For the reasons stated herein, plaintiff's motion for partial summary judgment is **GRANTED**.

### Standard of Review

Summary judgment is appropriate when the court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there are no genuine disputes as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

The party seeking summary judgment bears the initial burden of showing that summary judgement is appropriate by demonstrating the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 322-23; Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2005). However, once the moving party has "submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party to show that there are genuine issues of material fact." Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008).

## Background

On March 11, 2010, the United States initiated the present action seeking to reduce to judgment Hunt's unpaid tax liabilities for the 1990, 1991, 1992, 1993, 1994, 1995, 1996, 1999, 2000, and 2001 tax years, and to foreclose certain federal tax liens on pieces of real property owned by Hunt. On May 13, 2011, the United States filed the instant motion requesting that the court grant summary judgment with respect to Hunt's unpaid tax liabilities for the 1991, 1994, 1995, 1999, 2000, and 2001 tax years.

In support of its motion, the United States has submitted an IRS Form 4340, Certificate of Assessments and Payments, for each relevant year.[1] These forms indicate that Hunt was assessed with $1,924.00; $2,081.00; $2,338.00; $552.00; $821.00, and $948.00 in federal income taxes for the 1991, 1994, 1995, 1999, 2000, and 2001 tax years, respectively. These forms further reflect an assessment date of January 8, 2001, for years 1991, 1994, and 1995, and an assessment date of January 10, 2005, for years 1999, 2000, and 2001. In addition to these forms, the United States has submitted IRS account records for Hunt reflecting unpaid taxes, interest, and penalties for the relevant tax years totaling $29,747.58, as of November 24, 2008.[2]

---

[1] These forms are attached to the United States' Memorandum in Support of Summary Judgment as Exhibits 1A through 1F.

[2] These records are attached to the United States' Memorandum in Support as Exhibits 2A through 2F, and reflect total liabilities of $8,908.63; $7,606.71; $7,925.09; $1,424.72; $1,864.03; and $2,018.40 for tax years 1991, 1994, 1995, 1999, 2000, and 2001, respectively.

2

In his response, Hunt does not contest the United States' calculation of the total tax, interest, and penalties owed for each relevant tax year. See Def. Br. Opp'n, ¶¶ 14, 27, 39, 42, 45, 48. Hunt further concedes that summary judgment is appropriate as to the 1999, 2000, and 2001 tax years. However, with respect to 1991, 1994, and 1995, Hunt argues that summary judgment is inappropriate because a genuine dispute exists as to the assessment date of the taxes assessed against him for those years.[3] In support of his argument, Hunt has submitted two Letter 950s he received from the IRS on December 28, 1998 (the "Letters").[4] These Letters reference proposed adjustments to Hunt's tax liability for the 1991, 1994, and 1995 tax years, and request that Hunt inform the IRS within thirty (30) days of whether he agrees, or disagrees with the adjustments.

## Analysis

In a tax collection action, the United States "can establish a *prima facie* case in support of tax liability by showing that an assessment has been made against a defendant." United States v. Register, 717 F. Supp. 2d 517, 522 (E.D. Va. 2010) (citing United States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002)). In order to demonstrate that a valid assessment has been made, the United States may submit a Form 4340, Certificate of Assessments and Payments. Id. (citing United States v. Pomponio, 635 F.2d 293, 296 (4th Cir. 1980). "Such certificates are presumed

---

[3] It is important to note that the date of assessment certainly qualifies as a "material" fact in this case. The law requires that a tax collection action be brought within 10 years of the assessment of the tax. See 26 U.S.C. § 6502. According to Hunt, this action is barred with respect to the 1991, 1994, and 1995 tax years because the United States failed to file its complaint within 10 years of the true assessment date for those tax years. As discussed in the following footnote, Hunt contends that the "true" assessment date is December 28, 1998.

[4] These Letters are attached to Hunt's Brief in Opposition as Exhibits 2 and 6. The letter attached as Exhibit 2 pertains to the 1991 tax year (the "1991 Letter"), while the letter attached as Exhibit 6 covers the 1994 and 1995 tax years (the "1994 and 1995 Letter"). According to Hunt, the Letters serve as the assessment for the 1991, 1994, and 1995 tax years. Thus, Hunt argues, the ten-year limitation period commenced on the date of the Letters–December 28, 1998.

3

correct unless the defendant provides proof to the contrary." Id. (citing United States v. Janis, 428 U.S. 433, 440 (1976)); see also March v. Internal Revenue Service, 335 F.3d 1186, 1188 (10th Cir. 2003) (noting that a Form 4340 is "presumptive proof of a valid assessment"); Pomponio, noting the presumptive effect of Form 4340s in establishing tax liability under 26 U.S.C. § 6672); United States v. Scott, 290 F. Supp. 2d 1201, 1205-06 (S.D. Cal. 2003) (relying on the assessment dates detailed in a Form 4340 to refute a defendant's claim that the limitation period had expired in a tax collection case).

Here, the United States has produced Form 4340s for each relevant tax year. With respect to the 1999, 2000, and 2001 tax years, it is clear that no genuine issue of material fact exists as to Hunt's tax liability. Accordingly, as Hunt concedes, the United States' request for summary judgment as to those years must be granted.

Turning to the 1991, 1994, and 1995 tax years, Hunt argues, as previously noted, that summary judgment is inappropriate because a genuine dispute exists as to the date the taxes for those years were assessed against him. The court disagrees.

As previously discussed, the Form 4340s produced by the United States reflect an assessment date of January 8, 2001.[5] Hunt contends, however, that the "true" assessment date is December 28, 1998. Hunt premises his position on the two Letter 950s he received that were dated December 28, 1998. According to Hunt, the Letters "plainly appear to be assessments" because they contain "every element of an assessment," including the amount of tax and penalties due. While it is indeed true that the Letters reference the taxes and penalties reflected on the

---

[5] As noted by Hunt, the United States' Statement of Facts refers repeatedly to an assessment date of June 8, 2001. This discrepancy does not, however, impact the court's analysis of whether summary judgment is appropriate as it is clear that the discrepancy is simply the result of a scrivener's error.

4

Form 4340s, it does not necessarily follow that the Letters themselves constitute an assessment.

An assessment is the Secretary of the Treasury's official recording of the tax liabilities of a particular taxpayer. The United States Code requires that the "assessment shall be made by recording the liability of the taxpayer . . . in accordance with the rules or regulations prescribed by the Secretary." 26 U.S.C. § 6203. As relevant here, the applicable regulations provide that the "assessment shall be made by an assessment officer signing the summary record of assessment." 26 C.F.R. § 301.6203-1. The regulations further provide that "[t]he date of the assessment is the date the summary record is signed by an assessment officer." Id.; see also March, 335 F.3d at 1187 (discussing the assessment process and noting that the assessment officer's signing of the record of assessment establishes the assessment date and is significant for "certain timing requirements").[6]

By comparison, a Letter 950 simply advises a taxpayer of proposed adjustments to his or her tax liability for certain tax years.[7] It does not serve as an assessment, but rather provides the taxpayer with an opportunity to agree with, or dispute the proposed adjustments.[8] Indeed, the

---

[6] It is worth noting that Hunt quotes § 301.6203-1 in its entirety–which, as noted in the text above, plainly states that the assessment date is the date the summary record of assessment is signed by an assessment officer–and nevertheless advances the seemingly contradictory argument that the Letters establish the assessment date. Moreover, § 301.6203-1 requires that a copy of the record of assessment be furnished to the taxpayer if the taxpayer requests it. Here, Hunt concedes that he has not requested a copy of the record of assessment. Accordingly, it appears unreasonable to conclude that the unsolicited Letter 950s received by Hunt are, in fact, records of assessment.

[7] See 26 C.F.R. § 601.105(d); Celauro v. U.S. I.R.S., 411 F. Supp. 2d 257, 262 (E.D.N.Y. 2000) (observing that a taxpayer received a Letter 950 proposing changes to his federal taxes for certain tax years); Liems v. C.I.R., T.C. Memo. 2008-121, 2008 WL 1883989, at *1 (T.C. 2008) (referencing the receipt of a Letter 950 proposing adjustments to a taxpayers tax returns).

[8] See Liems, 2008 WL 1883989, at *1-2 (observing that a taxpayer received a Letter 950 advising him of proposed changes to his 1995 and 1996 tax returns on April 11, 1998, and that

Letters at issue here plainly refer to proposed changes to Hunt's tax liability for the specified years, and request that Hunt sign a consent form agreeing to the "immediate assessment" of any deficiencies.[9]

For these reasons, it is evident that no genuine dispute exists as to the date Hunt's tax liabilities for the 1991, 1994, and 1995 tax years were assessed against him. As a result, granting summary judgment as to those years is appropriate.

## Conclusion

As discussed above, no genuine issue of material fact exists as to Hunt's tax liabilities for the 1991, 1994, 1995, 1999, 2000, and 2001 tax years. Accordingly, the United States' motion for partial summary judgment is **GRANTED**, and it is hereby **ORDERED** that judgment be entered in favor of the United States in the amount of $29,747.58, plus statutory additions, including interest, accruing from and after November 24, 2008, until paid. It is further **ORDERED** that the parties contact the United States Magistrate Judge assigned to this case as soon as possible to schedule a settlement conference.[10]

---

the deficiencies referenced in the letter were assessed against him on February 8, 1999).

[9] Certainly, if the Letters themselves constituted the assessment, there would be no need for Hunt to sign such a form.

[10] The court is aware that Hunt filed a motion on June 17, 2011, requesting that the trial in this matter be continued and that a settlement conference be scheduled by the court. Although Hunt's motion is not yet ripe for a decision, the court believes that it is appropriate to order the scheduling of a settlement conference at this time. The court will consider Hunt's request for a continuance when it is appropriate to do so.

6

The Clerk is **REQUESTED** to mail copies of this Opinion to all counsel of record.

It is so **ORDERED**.

/s/
Jerome B. Friedman
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Va.
June 20, 2011